FILED
COURT OF APPEALS
DIVISION II

2013 JUL -2 AM 9: 06

STATE OF WASHINGTON

BY_____
          DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| WM. DICKSON COMPANY, | No. 42489-4-II |
| Respondent, | |
| v. | |
| MISENAR CONSTRUCTION, INC. d/b/a MISENAR HOMES, | UNPUBLISHED OPINION |
| Appellant. | |

JOHANSON, A.C.J. — Misenar Construction Inc. (Misenar) appeals the trial court's ruling that it owed Wm. Dickson Company (Dickson) for unpaid excavation and site development work that Dickson performed at Misenar's housing development. We affirm and hold that substantial evidence supports the challenged findings of fact which in turn support the trial court's conclusions of law. We also award Dickson reasonable attorney fees on appeal.

## FACTS

In October 2005, Misenar contracted with Dickson for development services on Misenar's new Lakeridge Estates housing development. Their written contract included the work's basic scope, the price and terms, insurance terms, and written change order requirements in a standard construction industry format. Dickson's initial bid for the work was $411,531.05.

Throughout the project the parties discussed, verbally and by e-mail, several changes to the contract. These changes required Dickson to perform additional work, at additional cost and delay. But Dickson believed that Misenar (1) approved all changes prior to Dickson doing the work, (2) accepted all its work, and (3) agreed to pay Dickson for the work. Misenar paid Dickson the original contract amount plus approximately $46,000 in changes but left several charged amounts unpaid. In May 2007, Dickson's work ended and Misenar made its final payment to Dickson.

In January 2009, Dickson filed its complaint against Misenar for breach of contract and quantum meruit/unjust enrichment, seeking a judgment for $81,233.14 plus interest from May 2007. In response, Misenar (1) denied that it owed Dickson more money than it had already paid, (2) raised several affirmative defenses, and (3) sought judgment against Dickson for Dickson's breach of contract.

In May 2009, Misenar moved for summary judgment dismissal of all Dickson's claims. In response, Dickson argued that factual questions remained making the case improper for summary judgment. In denying Misenar's summary judgment motion, the trial court's order provided, in part:

> While the Mike M. Johnson case[1] has strong language as to whether recovery can be made if the contract language as to change orders is not followed, the facts in that case are significantly different than the facts in the instant manner. [T]here are factual issues as to whether the parties agreed to deviate from the contract language. There are also credibility determinations which cannot be made on a summary judgment motion.

Clerk's Papers (CP) at 355.

---

[1] *Mike M. Johnson, Inc. v. County of Spokane*, 150 Wn.2d 375, 78 P.3d 161 (2003).

Between May 2009 and May 2010, the trial court permitted Misenar to file three amended answers. Each amended answer included additional breach of contract counterclaims against Dickson.

Trial began on September 21, 2010. After Dickson rested its case on September 27, Misenar moved for a directed verdict on its counterclaims under CR 7(a) and CR 8(d) because Dickson had not filed a reply to Misenar's counterclaims. Misenar argued that because Dickson's failure to reply was an admission of breach, the trial court should enter judgment in Misenar's favor for its counterclaims. The next day, Dickson filed a motion for leave to file a late reply to Misenar's counterclaims and a response to Misenar's motion for directed verdict. Dickson also filed its reply to Misenar's counterclaims and asserted several affirmative defenses. Dickson argued that the trial court should (1) treat Misenar's motion for directed verdict as a motion for default, (2) deny it, and (3) thereby accept Dickson's late filing. Dickson argued that it complied with CR 55(a)(1) because it had provided ample notice to Misenar of its position on the counterclaims and had already presented testimony at trial denying the counterclaims. Misenar moved to strike Dickson's reply.

Two days later, the court heard argument on (1) Dickson's motion for leave to file a late reply, (2) Misenar's motion to strike Dickson's untimely reply and affirmative defenses, and (3) Misenar's motion for directed verdict, in that order. First, the trial court granted Dickson leave to file its late reply, finding that doing so appropriately allowed the case to be decided on the merits.

Next, the trial court determined that Dickson's late filing was negligent, but that it was excusable because the parties' filings and discovery throughout the case indicated both parties' understanding that Dickson denied the counterclaims. Thus, the trial court denied Misenar's motion to strike Dickson's entire reply, but it granted Misenar's motion to strike Dickson's affirmative defenses, finding that allowing Dickson's affirmative defenses so late in the case would prejudice Misenar.

Third, the trial court treated Misenar's motion for a directed verdict as a CR 12(c) motion for judgment on the pleadings. But, the trial court concluded that Dickson met its burden to prove that the parties had waived the written change order requirement, and denied Misenar's motion.[2]

Trial then continued with Misenar's case. Several months after trial, the trial court issued its ruling, ordering Misenar to pay Dickson an additional $80,341.52.[3] Misenar appeals.

## ANALYSIS

### I. SUMMARY JUDGMENT

As a threshold issue, we reject Misenar's argument that the trial court erred when it denied Misenar's motion for summary judgment because a summary judgment order is not appealable after trial. A party cannot appeal a denial of summary judgment following a trial if the denial was based upon a determination that material facts were in dispute and must be

---

[2] The court specified that there was "a sufficient factual basis through the testimony of Mr. Hoven and Mr. Asahara to support that there has been a waiver" of the written change order requirement. Verbatim Report of Proceedings (VRP) (Sept. 29, 2010) at 625.

[3] The court denied Dickson's claims regarding a steel post for a stop sign and road crossing costs. The $80,341.52 ordered included $28,563.58 for Dickson's additional work plus interest and attorney fees.

resolved by the trier of fact. *Johnson v. Rothstein*, 52 Wn. App. 303, 304, 759 P.2d 471 (1988). Under RAP 12.1(b), we can raise this issue sua sponte because it "is one that affects judicial economy and involves interpreting court rules that define our jurisdiction." *Rothstein*, 52 Wn. App. at 304-05. Here, the trial court clearly determined that there were disputed facts which must be resolved by the trier of fact; thus the summary judgment order cannot be appealed because it was followed by a trial. *Rothstein*, 52 Wn. App. at 304.

## II. DIRECTED VERDICT

Next, Misenar argues that the trial court erred in denying its motion for a directed verdict on its counterclaims because a plaintiff is required to file a reply to a counterclaim and Dickson's failure to reply constituted Dickson's admission as to those claims. Misenar argues that under CR 7(a), CR 8(d), and CR 12(a)(4), the trial court did not have discretion to allow Dickson's untimely reply. We disagree.

We review a trial court's order granting a motion to file an untimely reply for abuse of discretion. A trial court abuses its discretion if it denies a request to file an untimely reply "for no apparent reason." *Beers v. Ross*, 137 Wn. App. 566, 574, 154 P.3d 277 (2007) (citing CR 6(b); *Goucher v. J.R. Simplot Co.*, 104 Wn.2d 662, 665, 709 P.2d 774 (1985)). Also, we support substantial compliance with the pleading rules to adequately promote justice and give defendants their day in court. *Morin v. Burris*, 160 Wn.2d 745, 757, 161 P.3d 956 (2007).

Here, the trial court supported its decision to allow Dickson's late filing with several reasons. The trial court found that the parties' pretrial filings and discovery indicated that the

parties understood that Dickson denied the claims and that the parties had effectively joined Misenar's breach of contract counterclaims to the other issues in the case. Also, the trial court noted that Dickson had presented testimony denying the counterclaims in its case in chief.

Nonetheless, Misenar argues that we should apply the rule from *Jansen v. Nu-West, Inc.*, that the failure to deny an averment in a counterclaim constitutes an admission and therefore Dickson admitted Misenar's counterclaims. 102 Wn. App. 432, 438, 6 P.3d 98 (2000), *review denied*, 143 Wn.2d 1006 (2001). But, *Jansen* is distinguishable because here, the trial court granted Dickson leave to file its reply; whereas in *Jansen* the plaintiff waited a year after the summary judgment order to file its reply and did not seek leave of court before doing so. Also, unlike in *Jansen*, here, the trial court found that Dickson's failure to file its reply was excusable because it was clear that both parties understood that Dickson denied the counterclaims. Further, *Jensen* involved res judicata because the trial court there granted summary judgment which precluded further litigation on those issues, but here the trial court did not order summary judgment for Misenar. Instead, the trial court specifically rejected the opportunity to do so and allowed the case to proceed on the merits.

We affirm the trial court's decision to allow Dickson's late reply filing, effectively denying Misenar's request for judgment on its counterclaims, because the trial court supported its decision with rational reasons. *Beers*, 137 Wn. App. at 573. We also affirm because Dickson clearly acknowledged the counterclaims in court through its filings and testimony, thereby substantially complying with the pleading rules. *Morin*, 160 Wn.2d at 756.

### III. CHALLENGED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Misenar assigns error to several of the trial court's findings of fact[4] and conclusions of law.[5] After a careful and thorough review of the record, we hold that substantial evidence supports the trial court's findings, and that the trial court did not err in its conclusions.

### A. Standard of Review

Where a party challenges a trial court's findings of fact and conclusions of law, we limit our review to determining whether substantial evidence supports the findings and whether those findings, in turn, support its legal conclusions. *Panorama Vill. Homeowners Ass'n v. Golden Rule Roofing, Inc.*, 102 Wn. App. 422, 425, 10 P.3d 417 (2000), *review denied*, 142 Wn.2d 1018 (2001). Substantial evidence is "'defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true.'" *Korst v. McMahon*, 136 Wn. App. 202, 206, 148 P.3d 1081 (2006) (quoting *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003)). This is a deferential standard, which views reasonable inferences in the light most favorable to the prevailing party. *Sunderland Family Treatment Servs. v. City of Pasco*, 127 Wn.2d 782, 788, 903 P.2d 986 (1995). We also defer to the trial court on issues of conflicting evidence, witness credibility, and evidence persuasiveness. *City of University Place v. McGuire*, 144 Wn.2d 640, 652, 30 P.3d 453 (2001). The party challenging a finding of fact

---

[4] Misenar assigns error to findings of fact 3, 4, 5, 14, 16, 25, 26, 27, 29, 32, 33, 34, 35, 36, 37, 38. Misenar also assigns error to findings of fact 10, 23, and 31 but then does not provide any argument relating to these findings, so these findings are treated as unchallenged findings.

[5] Misenar assigns error to conclusions of law 4, 7, 9, 16, 18, 19, 21, 22, 23, 24, 25, 26, 29.

bears the burden of showing that it is not supported by the record. *Panorama*, 102 Wn. App. at 425. Unchallenged findings of fact are verities on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

We review a conclusion of law erroneously labeled as a finding of fact as a conclusion of law and review a finding of fact erroneously labeled as a conclusion of law as a finding of fact. *Willener v. Sweeting*, 107 Wn.2d 388, 394, 730 P.2d 45 (1986). We review the factual components of a mixed finding and conclusion under the substantial evidence standard and we review conclusions of law de novo. *Sunnyside*, 149 Wn.2d at 880; *In re Estate of Haviland*, 162 Wn. App. 548, 561, 255 P.3d 854 (2011).

## B. Analysis

### 1. Waiver of Written Change Orders

Misenar challenges several findings involving waiver of the written change order requirement. A waiver is a voluntary and intentional relinquishment of a known right. *River House Dev., Inc. v. Integrus Architecture, P.S.*, 167 Wn. App. 221, 237, 272 P.3d 289 (2012). A contract condition requiring that performance of extra work be approved in writing may be waived by the parties' conduct. *Am. Sheet Metal Works, Inc. v. Haynes*, 67 Wn.2d 153, 158, 407 P.2d 429 (1965). Such a waiver can be shown by evidence that the owner authorized, permitted, and/or directed the contractor to perform the work in question. *Haynes*, 67 Wn.2d at 159; *CKP, Inc. v. GRS Constr. Co.*, 63 Wn. App. 601, 821 P.2d 63 (1991) (holding the contractual requirement regarding written requests for extras was waived where CKP followed oral directives), *review denied*, 120 Wn.2d 1010 (1992). Under *Haynes*, an owner cannot deny

compensation to a contractor for extra work authorized and directed by the owner, despite the contractor's failure to get written approval. 67 Wn.2d at 153.

Misenar argues that the trial court could not have found unequivocal waiver because waiver by conduct requires unequivocal acts and the parties' conduct here was equivocal, citing *Am. Safety Cas. Ins. Co. v. City of Olympia*, 162 Wn.2d 762, 773, 174 P.3d 54 (2007). In *Am. Safety*, when a dispute arose and the city agreed to negotiate, the city also asserted in writing that it reserved its right to demand strict compliance with the contractual procedures and that it was only willing to negotiate without waiving any of its defenses. 162 Wn.2d at 771-72. Thus, the Supreme Court held that a party that simply enters into negotiation does not necessarily waive its contractual rights and that the city could not have unequivocally waived the contractual provision at issue. *Am. Safety*, 162 Wn.2d at 773. But *Am. Safety* does not apply here. Misenar does not support its argument with any trial testimony or evidence that it clearly reserved its rights to demand strict compliance with the written change order requirement. Instead, as explained below, the evidence showed that the parties e-mailed and orally discussed changes in lieu of formal written change orders.

Challenged findings 3,[6] 4,[7] 5,[8] and 26[9] involve Misenar's waiver of the written change order requirement. Testimony by Shawn Hammond, Dickson's employee who performed work at the site; Randy Asahara, Dickson's senior project manager; and Michael Hoven, Dickson's project manager, support these findings. As Dickson's representatives, they testified to the parties' oral discussion of any changes and Robert "Bodi" Misenar's[10] oral approval and agreement to pay Dickson for those changes before Dickson did the work—thereby waiving any written change order requirement. Verbatim Report of Proceedings (VRP) (Sept. 29, 2010) at 626. Also, several e-mails between Dickson's representatives and Bodi discussing proposed changes support the waiver conclusion.

Specifically, Hammond, Asahara, and Hoven testified that they talked with Bodi often because he was commonly at the work site and that they did not use written documentation of change orders even after they specifically asked Bodi if they needed to do so because he indicated that they did not. Instead, Bodi told them that if he agreed to the costs of the additional

---

[6] Finding of fact 3 provides, "Although the contract contained a provision requiring written change orders, the parties mutually agreed to waive that contractual provision." CP at 969.

[7] Finding of fact 4 provides, "Accordingly, the parties agreed that Dickson's representatives would discuss proposed changes and expected cost with Misenar, who would either approve or reject the change. Numerous e[-]mails support this pattern of informal changes to the contract." CP at 969.

[8] Finding of fact 5 provides, "Misenar unequivocally waived the requirement for written change orders from Dickson." CP at 969.

[9] Finding of fact 26 provides, "Misenar did not prove a failure to comply with a contractual condition consistent with the findings above that the parties mutually waived the contract provision regarding written change orders." CP at 974.

[10] Robert "Bodi" Misenar is the owner of Misenar Construction, Inc. For clarity, we refer to him as "Bodi," intending no disrespect.

work, that Dickson could add the additional amounts to the initial contract price, and that Misenar would pay it.

We defer to the trial court on issues of conflicting evidence and evidence persuasiveness. *McGuire*, 144 Wn.2d at 652. The trial court found that compliance with the written change order requirement was waived. The evidence substantially supports the trial court's waiver finding. And, the trial court's conclusions of law 4[11] and 19[12] regarding waiver (1) logically flow from the findings of fact, thus they are supported by substantial evidence; and (2) are consistent with *Haynes* and *CKP, Inc.*

## 2. Dickson's Damages

Misenar also challenges several findings and conclusions regarding the trial court's damage award.

### a. *Import Trench Backfill Materials*

Several facts support challenged finding 14.[13] First, the Holroyd bid and Dickson's time and materials worksheet introduced at trial for the price of the additional costs support finding 14. Also, finding 14 is supported by (1) Asahara's testimony that Dickson acquired the materials

---

[11] Conclusion of law 4 provides, "Misenar unequivocally waived the contract provision requiring written change orders, so Misenar is obligated to pay Dickson for some of the 'extras' claimed by Dickson as outlined below." CP at 977.

[12] Conclusion of law 19 provides, "The practice of not using written change orders was not a breach of contract because this contract provision was unequivocally waived. Misenar's first counterclaim (breach of contract) is denied." CP at 979.

[13] Finding of fact 14 provides, "The Court finds that it is necessary for [Misenar] to pay an amount for these [import trench backfill] materials. The amount [Misenar] should pay is $21,554.89." CP at 971.

from Holroyd because Holroyd provided the least costly backfill materials in the area; and (2) Asahara's and Hoven's testimony about the county's requirements for the backfill materials, and that at the time of the contract the parties intended to use native backfill material but that they later discovered that they would have to import backfill material at an additional cost. Thus, substantial evidence supports finding 14, and because conclusion 7[14] logically flows from finding 14, it is also supported by substantial evidence.

b. *Tree Removal*

Next, Hammond's testimony provides substantial evidence to support challenged finding 16.[15] Hammond testified that the tree removal was not in the original contract but that Misenar approved the additional cost of having Dickson remove the tree. And, conclusion 9 provides, "Misenar must pay the cost of removing the additional tree ($2,680.00)." CP at 978. This conclusion logically flows from finding 16 and is thus supported by substantial evidence.

c. *Asphalt Repair*

Next, challenged conclusion 16 provides, "Misenar must pay the cost for the repairs to the asphalt necessitated by the work of a third party ($860.00)." CP at 978. This conclusion logically follows from finding of fact 23, which is an unchallenged finding and is therefore a verity on appeal. *Robel*, 148 Wn.2d at 42. The $860 amount is also supported by (1) exhibit 69P introduced at trial, which is a breakdown of the additional costs to Dickson for the repairs to the

---

[14] Conclusion of law 7 provides, "Misenar must pay $21,554.89 (the total of the cost for the pit run, trip fees, labor, and equipment) to Dickson for the costs of the import trench backfill." CP at 978.

[15] Finding of fact 16 provides, "Work on the project necessitated removal of a tree located on property that did not belong to Misenar (the existing home on 23rd Avenue). Dickson incurred $2,680.00 in additional costs for removal of this tree." CP at 972.

asphalt and (2) Hoven's testimony that Misenar approved this change to the original contract. Substantial evidence supports this conclusion.

    d. *Total Damage Award*

Next, challenged finding 37[16] provides the trial court's total damage award for Dickson's extra work. This finding is supported by substantial evidence from (1) unchallenged finding 6 that the parties agreed to the revised contract price of $421,251.05; (2) the trial court's findings that Dickson was entitled to payment for several extras; (3) and exhibit 64 showing Misenar's unpaid amounts. Similarly, the trial court's conclusions of law 25[17] and 29[18] relating to the total damage award logically flow from finding 37 and are thus supported by substantial evidence.

---

[16] Finding of fact 37 provides:

> The total of all the claims for "extras" that were performed under the contract for which Dickson should be paid is $28,577.89. When that figure is added to the total in the Project Work Bid dated October 27, 2005, of $421,251.05, the total due is $449,828.94. With Washington State sales tax of 8.8% added to that amount, the total due under the contract including "extras" is $489[,]413.89. Misenar paid a total of $457,652.02 to Dickson, leaving a balance owing of $31,761.87.

CP at 976.

[17] Conclusion of law 25 provides, "Dickson is entitled to damages of $31,761.87 (not including prejudgment interest), and Misenar is entitled to offset that amount by $3,198.29 for the defective sidewalks, so judgment should be entered in Dickson's favor for $28,563.58, not including prejudgment interest." CP at 979.

[18] Conclusion of law 29 provides, "Judgment should be entered in Dickson's favor consistent with these findings and conclusions." CP at 980.

e. *Prejudgment Interest*

Challenged finding 38[19] relates to the trial court's prejudgment interest award and is supported by Dickson's January 31 invoice which included all the money Dickson was requesting from Misenar at that point. And conclusion 26 provides, "Dickson is entitled to prejudgment interest calculated from January 31, 2007 to the present on $21,811.25 in the amount of $11,777.94." CP at 979. The trial court properly found that as of January 31, Misenar owed Dickson a liquidated amount that could be computed with exactness. Thus, the trial court properly awarded prejudgment interest calculated from that date. *Lakes v. von der Mehden*, 117 Wn. App. 212, 217, 70 P.3d 154 (2003), *review denied*, 150 Wn.2d 1036 (2004).[20] This conclusion is supported by finding 38 that Misenar should have paid Dickson for the extras at least as of January 31.

---

[19] Finding of Fact 38 provides:

> Dickson issued a pay estimate dated May 1, 2006, which included each of the "extras" for which Misenar is obligated to pay. The amount indicated as owing on the pay estimate dated May 1, 2006 was included on an invoice to Misenar dated January 31, 2007. Payment for the 'extras' was due and should have been paid at least as of the date of the January 31, 2007 invoice.

CP at 976.

[20] A trial court properly awards prejudgment interest at the time the amount claimed is liquidated or when the amount claimed is unliquidated but a contract provides a fixed standard amount. *Lakes*, 117 Wn. App. at 217. A claim is liquidated if the evidence makes it possible to compute with exactness, without reliance on opinion or discretion. *Lakes*, 117 Wn. App. at 217.

### 3. Misenar's Claims for Damages

Also, Misenar challenges findings relating to its claims for damages. Finding 36 provides, "Misenar presented no evidence as to what the actual damages are to him for the loss of 4.5 feet of Lot 2, or the location of the pipe." CP at 976. Misenar does not cite any evidence introduced at trial of actual damages for the loss of the 4.5 feet or the pipe's location; thus Misenar has not met its burden of proof on appeal as to this finding. *Panorama*, 102 Wn. App. at 425. And, the trial court found Misenar presented unpersuasive evidence of any actual damages from the loss of the 4.5 feet and we will not disturb the trial court's determinations on evidence persuasiveness. *McGuire*, 144 Wn.2d at 652.

Next, challenged conclusion 23 provides, "Misenar's claim for damages based on delay (raised in closing argument) is denied because many of the delays were not the fault of Dickson." CP at 979. This conclusion logically follows from findings of fact 14, 16, 17, 18, and 23 that Dickson performed additional work after the parties agreed to many changes to the original scope of Dickson's work. These findings are supported by substantial evidence. And, finding 35,[21] a mislabeled conclusion, logically flows from findings 30, 31, 32, 33, and 34, which are supported by substantial evidence. Accordingly, substantial evidence supports these conclusions.

---

[21] Finding of fact 35 provides, "Misenar failed to prove any damages resulting from the location of the wall and the bypass line." CP 976.

No. 42489-4-II

4. Misenar's Affirmative Defenses

Next, challenged finding 25[22] relates to Misenar's failure to meet its burden on affirmative defenses of equitable estoppel, unclean hands, and savings to Dickson. Misenar does not cite any trial testimony or trial evidence that shows that Dickson was able to save money from Misenar's suggested changes. And, the trial court found Misenar's testimony regarding equitable estoppel and unclean hands unpersuasive. Again, we do not disturb a trial court's determinations on issues of conflicting evidence and evidence persuasiveness. *McGuire*, 144 Wn.2d at 652. Conclusions 18[23] and 24[24] logically flow from findings 14 and 25 and are thus supported by substantial evidence.

Challenged finding 27[25] is a mixed finding and conclusion and relates to Misenar's

---

[22] Finding of fact 25 provides, "Misenar has not met his burden of proof on his affirmative defenses. Misenar did not produce sufficient evidence to prove equitable estoppel or unclean hands in that Misenar did not produce evidence of the alleged savings to Dickson from changes made to the contract." CP at 974.

[23] Conclusion of law 18 provides, "Misenar did not meet his burden of proof on any of his affirmative defenses. None of his affirmative defenses apply." CP at 978.

[24] Conclusion of law 24 provides, "Misenar's claim that credits should have been given (raised in closing argument) is denied because Misenar did not produce evidence of the alleged savings to Dickson from changes made to the contract." CP at 979.

[25] Finding of fact 27 provides, in pertinent part, "Misenar did not prove the defense of accord and satisfaction because the phrase "final billing with retainage" does not clearly tell Dickson that this is the final payment to be made by Misenar and that by cashing the check Dickson would be waiving any future claims for payment." CP at 974.

16

failure to prove its affirmative defense of accord and satisfaction.[26] Although Misenar asserts

that "well established case law" prohibits a creditor from accepting a debtor's final payment and

then seeking additional compensation, Misenar does not cite a case where the only evidence of

an accord and satisfaction is the words "Final Billing w/ret (retainage)." Br. of Appellant at 43.

Nor does Misenar cite any conduct or declaration by Misenar that Dickson could have arguably

understood to mean that the money tendered was final satisfaction of the debt. Accordingly, we

conclude substantial evidence supports finding 27 and the trial court did not err in its conclusion.

5. Misenar's Counterclaims

Misenar challenges findings 29,[27] 32,[28] 33,[29] and 34[30] relating to its unsuccessful

counterclaims against Dickson. However, substantial evidence supports these findings. Hoven

---

[26] Accord and satisfaction requires the parties have a bona fide dispute, an agreement to settle that dispute, and performance of the agreement. *Paopao v. Dep't of Soc. & Health Servs.*, 145 Wn. App. 40, 46, 185 P.3d 640 (2008). An accord requires a meeting of the minds. *U.S. Bank Nat'l Ass'n v. Whitney*, 119 Wn. App. 339, 351, 81 P.3d 135 (2003), *review denied*, 152 Wn.2d 1021 (2004). Also, the tender must be accompanied by conduct and declaration by the debtor such that the creditor cannot fail to understand that the money is tendered as final satisfaction of the debt. *U.S. Bank*, 119 Wn. App. at 351.

[27] Finding of fact 29 provides:

> Misenar claimed that Dickson failed to complete clearing and grubbing, that it removed, buried, or misplaced survey stakes, and that it failed to leave the job site in a clean and orderly manner. Misenar requested reimbursement for costs incurred, but Misenar failed to meet its burden of proof as to these claims.

CP at 975.

[28] Finding of fact 32 provides, "There was conflicting testimony about what was staked with regard to the bypass line and the wall. At least the southern portion of the wall was staked by Sadler Barnard. There was a lot of communication between the parties about the movement of the bypass line." CP at 975.

testified at trial that Dickson did not design, engineer, or stake out the wall. Instead, the civil engineer designed the wall and a separate survey company staked the wall's location. Dickson then built the wall according to the engineer's and surveyor's plans. Also, Hoven testified about exhibit 131 which was an e-mail dated October 24 from Harold Hagenson, the civil engineer for the project, regarding the required change to the bypass line and retention wall. The e-mail said that the retaining wall and bypass line needed to be moved about eight feet west of the latest design location. And in the e-mail, Hagenson also said that "it looks like a doable relocation." Ex. 131.

And Misenar cites only two pieces of evidence to support its argument that un-contradicted evidence shows that it incurred costs in clearing, grubbing, and re-staking the entry curbs (1) exhibit 61, an invoice from a subcontractor that Misenar paid for some work; and (2) exhibit 62, a list of transactions with Misenar's vendors. But these exhibits do not show that these incurred costs were Dickson's responsibility or caused by Dickson's breach of its contractual obligations. The trial court found Misenar's testimony regarding these claims unpersuasive and we will not disturb that finding. *McGuire*, 144 Wn.2d at 652.

---

[29] Finding of fact 33 provides,

> Originally, the bypass line was too close to the retention pond wall. Shawn Hammond notified Hal Hagenson of the conflict between the wall and the pipe on October 21, 2005. Hagenson informed Misenar of the problem on October 24, 2005, in an e[-]mail contained in Exhibit 131. Hagenson said of Hammond's proposed relocation of the bypass line that "it looks like a doable relocation."

CP at 975-76.

[30] Finding of fact 34 provides, "Dickson is not responsible for the encroachment of the ultrablock wall onto Lot 2. Dickson is not responsible for any encroachment of the bypass line outside of the driveway easement." CP at 976.

18

Next, conclusion 21 provides, "Misenar's third counterclaim (back charges and costs) is denied for lack of adequate evidence." CP at 979. Finding 29 supports this conclusion; thus it is supported by substantial evidence. And, conclusion 22 provides:

> Misenar's fourth and fifth counterclaims (storm bypass line and pond retention wall) are denied because Dickson was not responsible for encroachment of either the storm bypass line or the retention wall and because Misenar did not present sufficient evidence of damages.

CP at 979. Findings 34, 35, and 36 support this conclusion; thus it is supported by substantial evidence.

6. Conclusion

After limiting review to whether substantial evidence supports the trial court's findings of fact, viewing reasonable inferences in the light most favorable to Dickson, and deferring to the trial court on issues of conflicting evidence, witness credibility, and evidence persuasiveness, we conclude that substantial evidence supports each contested finding. And the trial court's findings, in turn, support its legal conclusions.

ATTORNEY FEES

Both parties request attorney fees on appeal under RAP 18.1. We deny Misenar's request because it is not the prevailing party, and we award attorney fees to Dickson. A contract that provides for attorney fees at trial also supports such an award on appeal. *Atlas Supply, Inc. v. Realm, Inc.*, 170 Wn. App. 234, 241, 287 P.3d 606 (2012). The parties' contract contained a provision for the award of attorney fees to the prevailing party, including appellate proceedings. Because Dickson has prevailed on appeal, it is entitled to reasonable attorney fees.

No. 42489-4-II

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Johanson, A.C.J.

We concur:

_____
Hunt, J.

_____
Quinn-Brintnall, J.

20